May it please the court, good morning. It is my pleasure to appear here before this court for the second time in this case, representing Lisa Jones in this manner. The fundamental problem with what occurred at the district court level is that apparently the district court held a bench trial and didn't tell me. And as a result, I thought I was responding to a summary judgment motion instead of what apparently the district court wanted me to do was to present my entire case. And that is a problem that was repeated over and over again in the briefing by Aetna in this case. Aetna continuously said I had to prove everything. No, I don't. I have to present evidence. Aetna said that there was evidence to support what the district court did here. There was, but that's not the issue that we're here for today. The issue we're here for today is whether there are factual disputes that entitle me to a trial in front of the fact finder in this particular case. And what this dovetails into is a problem that is common in these ERISA cases, which is that claimants are encouraged and believe that they don't need a lawyer at the administrative level and generally don't go to a lawyer until after they are told they need to file a lawsuit. We all know what the problems with that are, but unfortunately the claimants don't. In addition, the Social Security Administration has determined that my client is disabled. Now, in this case, that ship has sailed. There was already a determination by this court that Aetna was justified because of the differing standards that we use in ERISA, that Aetna's decision was justified. I'm not here to relitigate that issue. What we are here to litigate, however, is whether in making that decision that is different than the Social Security Administration, whether Aetna breached its fiduciary duties in coming to that conclusion. I have chose to focus on two of those duties that I believe were breached in this case. And the reason for that is because these are duties that were created by Aetna themselves in trying to determine what its fiduciary duties are. Under ERISA, ERISA has created the reasonable person standard into determining what duties we look to in determining what a fiduciary is supposed to do in this particular case. Are there any cases that say that failure to follow their internal policies is in and of itself a breach of a fiduciary duty? Not that I know of, Judge. Part of the problem that we have in this breach of fiduciary duty realm under ERISA is nobody really thought that these kind of lawsuits were going to go anywhere until 2009 when AMRA came out with its decision. As a result, the Supreme Court came out with the AMRA decision. As a result, what we are left with, I freely admit, is what is an attempt to develop a body of law for breach of fiduciary duty under ERISA, which it has become clear is different than what is required under state law fiduciary duty claims. So for example, when the district court, in talking about causation, was looking to a state law fiduciary duty claim, that's not what we're talking about here. And I freely admit, as far as I know, there is no such case, and we're trying to feel our way as to what we're supposed to do. But I do think, go ahead. Then tell me why it makes sense that the failure to necessarily follow an internal procedure should rise to the level of a breach of fiduciary duty. Because I can think of thousands of internal procedures that are relatively meaningless. And I agree. And honestly, why I chose to focus on these two, Judge. Because in determining what that reasonable standard is, again, what I'm supposed to do is provide evidence. And the evidence that we have, as far as the summary judgment motion is concerned, and what we have before us today is twofold. Let's talk about those two duties. Duty number one was the written communication to the doctors. What Aetna themselves said in promulgating this standard that I allege they violated and created the duty, is that we're doing this for a number of reasons. We're doing this to ensure consistency. And these are their words, Judge, not mine. It is vital that we give every opportunity for the providers to comment in order to provide additional documentation that was not originally presented. This decision letter must thoroughly describe why we are disagreeing with these providers' opinions. They themselves told us why this is important and why this particular duty matters in making the decision in this case. The other duty that I contend was violated, which was the definition of what disability is. That, of course, goes to the very heart of what they are trying to determine here in whether my client was disabled. And in arguing that they came up with the wrong definition of disability, and especially in the context of this case where, look, everybody agrees that the reason why my client was disabled was because of pain. Everybody knows that Aetna ignored that and basically said that doesn't matter. That goes to the very heart of whether she is disabled or not. Counsel, I thought right in the denial it says that she had pain and acknowledged that Dr. How do you say, Gariga? How do you say it? Gariga, yeah. Gariga, good. That she had told that doctor about her pain and they acknowledged that. So is it quite right to say they ignored? I think that's what you say in your brief, too, pain, when it's in the denial letter. And in the sense that they say that Dr. Gariga said this, but then ignored it in terms of whether they used that fact to determine whether she was disabled in this matter. Because what they also said was that we are relying on Dr. Swanmore, who was the original Aetna's original doctor in the original client. Dr. Swanmore said, in no uncertain terms, pain is not a disability. Pain is not a functional limitation. I don't consider whether somebody is in pain in determining whether that person is disabled or not. The issue for us, and again, I'm not asking the court to decide this because we're not at that stage yet. Wait, we're at summary judgment, aren't we? We're at summary judgment. Okay, go ahead. What we're trying to decide is whether there is evidence that I can present to the fact finder that says that there is a standard here. That Aetna themselves promulgated and was violated. And that chain of evidence certainly exists, which is Aetna relied on Dr. Swanmore and also Dr. Gerstenblatt, who was the appeal doctor, who we can talk about in a second, too. We relied on Dr. Swanmore. This was the basis for our decision. She ignored pain. That's something she shouldn't have ignored. And that's the chain of evidence that we're trying to establish that at least gets me beyond summary judgment and allows me to go in front of the fact finder to make that determination. The second issue with any tort case is once you establish whether a duty exists is whether that duty was breached. And I don't think there's any doubt about that here. But again, it doesn't matter. The issue is whether there is evidence. Clearly letters were not sent to three different doctors, all of whom found my client was disabled. Clearly the designated representative of Aetna said, this policy applies to this case, and therefore we can make that chain of evidence to say those letters should have been sent. And they were not. And there is no question about that. They admit that. In terms of the disability, again, that comes back to what I said about Dr. Swanmore. It also goes to Dr. Gerstenblatt, who actually created his own duty, apparently, when he said that in order to find a disability, I've got to find that this pain, which I will consider, caused a risk of harm. That is a standard that exists nowhere. And again, not asking this court to determine whether Dr. Gerstenblatt is right or wrong. I'm just saying there is evidence to defeat the summary judgment motion. I'd like to briefly talk about causation, because that is something that the district court brought up that we did not. There was no factual evidence at all that was presented in this case as far as causation was concerned. As a result, I freely admit it was not discussed, because again, I was only obligated to respond to what was in the summary judgment motion. I wasn't obligated to put on my entire case. But even if I was, which I wasn't, but even if I was, it doesn't matter. Because if there's no evidence, under all the cases that have talked about causation, in the context of an ERISA breach of duty, or breach of fiduciary duty case, that initial burden shifts over to the defendant to establish why there is no causation. And the reason for that- Counsel, what about the bare words of Amara? A planned participant must show that the violation injured him or her. Yes. And just like in any burden shifting case, ultimately the burden remains on me. And what the issue is, whether the initial burden shifting takes place. Where in the initial burden shifting, if I establish breach in duty, or a violation of duty and breach, I've established causation, the burden shifts to the defendant to put forth some evidence. And then it is always, as in any case, it is always on me ultimately to establish the causation. Once that burden shifts back to me. And the point is, is that there was no evidence in this case, because nobody ever talked about it until the district court did. And even if I was obligated to put on some evidence of causation, which I wasn't, it was defendant's duty to go first. And there's a good reason for that. And that is because, imagine what, if I was the initial, if it was initially on me to establish causation, what would that causation evidence be? I'd go to one of these doctors five years later and say, hey, if you had gotten this letter five years ago, would you have responded to it? And then I have to go to Edna and say, hey, if you got whatever letter it was that the doctor came up with, would you then have affirmed the claim or denied the claim? Well, that kind of speculation I'm not even sure is allowable evidence. That's why the initial burden shifts to the defendant to show why it matters. And then it shifts back to me to establish that the causation exists. Again, your honors, I'm not asking you to find that I won. We're not at that stage yet. I'm asking you to find that I didn't lose. And that's why I'd ask that this court remand this matter. Thank you, Mr. Canarium. Mr. Matheson. May it please the court. We plaintiff here, Ms. Jones has had two bites of the apple. She's here asking for a third. And she's done it, and she's asking for it in a way, regardless of the phrases used and the terminology presented to the court, you saw in the briefing, both to the district court as well as to this court, and quite frankly in the argument this morning, that she is attempting to relitigate the A1B claim for benefits. Almost every one of the allegations of error by the district court, or the reasons that this court should reverse and remand again for a trial, are things that are claim process related. And I actually went back through, Judge Benton was on the first panel, and I believe it was your voice I heard when I listened to the argument in the first panel. You asked questions to Mr. Canarium about the allegations in the complaint, and whether those allegations really related to the claim for benefits under A1B, or if there was really anything different that would even justify the court giving him an opportunity to go past the pleading stage for us to test that breach of fiduciary duty claim through summary judgment. The only issues he essentially conceded, or actually did concede, that all but two of the factors or the allegations identified under count two, and they were labeled A through I in the amended complaint, all but two of those in fact related to the claims process. The ones that allegedly didn't were using claims examiners with a conflict of interest, and violating their own policies by relying upon paid physicians. As you heard, those were briefed below. The district court agreed with us that he did not state a viable claim. There was no evidence to support those allegations, or I should say she. And here we have the allegations are that there was an improper failure to communicate with the attending physicians, and that there was an improper application or interpretation of the policy or the plan terms. Those were as conceded in the first argument, and as this court probably knows from reviewing other ERISA cases, those are claims process issues. Those are the exact types of things that if in fact they were true, that if there was some improper conduct, not an appropriate and reasonable investigation of the claim, that would either lead to a reversal, finding that a decision was arbitrary and capricious, or finding that there was a procedural defect or issue that maybe would have had this court, in the first instance, remanded back to Aetna for further review. The record didn't support any of those. So the only issues that the plaintiff here or that Ms. Jones here used to even get to go forward and conduct discovery, now she hasn't even preserved and argued to this court as a basis to get another opportunity. And on that basis, the court should certainly affirm the district court. I would also point just briefly, we noted that the whole idea of burden shifting and lack of causation, that that wasn't even raised by the plaintiff in the briefing below, and her counsel conceded that. He said that he didn't raise it. There isn't a good reason. Did you put that at issue in your motion? We put it at issue, Your Honor, by saying several things. Certainly our motion for summary judgment said that there was no breach and that alternatively, if there was any kind of breach, that there was no harm or damage. Certainly at that point, that triggered Ms. Jones to respond. If there was an argument that we also had to show that, number one, she has to show a breach of fiduciary duty before you even trigger any kind of burden shifting. And that also, in fact, that we had not shown or that we have to show further that there was a lack of causation. Regardless, even if the court would get to that issue. To expect a response from the plaintiff here, you would have, in your motion for summary judgment, had to have put that element at issue, right? We did. So we laid out the elements, as did the district court, that the elements are, for a breach of fiduciary duty, there has to be a fiduciary, there has to be a breach, and there has to be approximate harm or causation. And so we addressed each one of those elements, including the causation issue, and we rebutted that. And at that point, as well as all of the other things, Ms. Jones can't sit there and say, I'm going to wait until trial and hold my cards and not respond. And that's effectively what she wants to do here. She says that there was a trial that she didn't know, facetiously, there was a trial and I didn't get to participate. So in responding to the summary judgment motion, did they respond to the causation question? They did not, Your Honor. And they certainly did not raise any kind of specific burden shifting that it was, in fact, Aetna's burden to disprove causation even before she proved that there was actual causation. And I would point out on that issue, I don't think the court ever gets there, but the cases that are cited, those are all very different kinds of cases. They are Section 29 USC 1132A breach of fiduciary duty cases under a different section of ERISA. Here, the breach of fiduciary duty is under Section 1104. All of those cases that you see, including some of the cases in the Eighth Circuit, are 1109 cases. They're cases brought on behalf of the plan, and they are to remedy a loss to the plan. And in that situation, it makes sense that an individual participant proceeding on behalf of the plan might not have information about how the plan was harmed, and then that might be in the possession of the plan. Here, the alleged harm, the alleged damage that Ms. Jones claims, she's the only one that knows what that is. My client wouldn't know that, so it doesn't make sense to even have to shift that burden to Aetna before she goes. As far as what took place after this court reversed the first time, so the judge said it. We had a scheduling conference. The judge set certain deadlines and dates. One of those deadlines was expert reports. That date came and went without any disclosure of experts, any expert disclosures, opinions, reports by Ms. Jones. We then filed our motion for summary judgment. Again, we saw no response, not a single scrap of additional medical records, reports, declarations, or any kind of evidence from Ms. Jones in response to our summary judgment motion. And remember, the whole argument here, or the primary argument here, is that there was a lack of communication with her physicians, and that if there had been, which is untrue, but if there had been one more letter that had been written to them, or in the instance of the letter that was written to Dr. Gariga, if he had been given 10 days instead of 5 days, that that was, number one, a breach of the fiduciary duty, and that the outcome would have been different. Well, certainly what I think the district court judge and we, and your honors, would expect is that we would see the kind of responses and the information that the doctors would have provided if they had been contacted as Ms. Jones' request. We have, what we have in the record, and there can't be any new evidence presented at trial, because there were no further documents, no further witnesses identified in the initial disclosures after the case went back, no experts, no responses with any substantive affidavits or evidence to our summary judgment motion, so there's not going to be new evidence at a trial. So we have the exact same record of what the doctors' opinions were or weren't, as in the administrative record, that this court already reviewed, decided that that did not act unreasonably, and as a result, entered a summary, or affirmed a summary judgment as to the claim for benefits. Ms. Jones, as part of the, also as part of the underlying litigation, she was deposed. She couldn't identify, we asked her about what additional evidence she wanted to submit or if there was any, and she couldn't identify anything. There wasn't anything provided after her deposition. There were, in the peer review or the medical review reports, each time when those doctors attempted to call Ms. Jones' physicians, if they couldn't reach them, they identified what they would have asked if they, in fact, reached them. And that information was given to Ms. Jones, both after the initial termination decision, the letter, and then also at the point where the final claim decision was made. Again, so she had that information. Her attorney had that information. They could have shared that with the physicians. In fact, Dr. Gariga had a copy of that. One of the reports, Dr. Swan Moore, she, in fact, spoke to Dr. Gariga. He agreed that there were no findings or clinical results or anything that he could explain that kept her from performing her sedentary job. That conversation was, in fact, summarized in her report. Again, that was, the summary of that conversation was included in the decision letter that was provided to Ms. Jones. And we don't see, again, what you would expect is, given the complaints, that Dr. Gariga would have said, I never said that. You misquoted me. You misstated this. That's false. We don't see any of that. And that's why, number one, there isn't a breach of fiduciary duty. Number two, there's not a single bit of evidence that shows that there was any impact or harm to Ms. Jones. Your Honor, ask about whether the violation of an internal procedure or policy is a breach of fiduciary duty and whether there were any cases on that. And I tend to agree that I'm not aware of any, at least certainly not in the Eighth Circuit, that would say that a claims administrator's violation of its internal policies and procedures is a, per se, breach of fiduciary duty. And I think that's because it isn't. Number one, it's- The district court here, though, assumed there was a breach, right? Plainly. She did, in a footnote. Go ahead with your-  Go ahead with your- She, in a footnote, although she said, I'm not sure that there is even a breach of fiduciary duty. But even if there is, and then she went on to analyze it. Go ahead with your- But the reason that there aren't any cases is because it's not a breach of fiduciary duty. These are professionals who are administering these claims. It is explained in the deposition, the 30B6 deposition of Mr. Horton. These people ultimately exercise their professional discretion on what to do and not to do. Certainly, the guideline that's presented to the court and argued as a violation, that's there. But these are not people that they have to check a box, and if they miss one check box, that there is some type of violation. They determine what's appropriate given- Well, the words of the statute are a problem for you because it says a fiduciary shall discharge his duties in accordance with the documents. Period. In accordance with the plan documents is what that's referring to. Yeah, right. Yeah. And these are not plan documents. These are internal guidelines. Okay. The next phrase says, an instrument's governing the plan. Correct. So the plan and the summary plan description is what those refer to. That says instruments. It's plural, counsel. You think instruments is just the summary plan description? Well, I think it's the plan document, the summary plan description, and I think earlier sections of the statute refer to that and define that. I don't think it refers to- There are regulations that- Companies aren't even required to have written policies and procedures. They have to administer claims in an appropriate and fair manner. We contend, and in fact, this court found that they did so here. They took a reasoned review. They made multiple efforts to talk to her doctors. They had numerous conversations with her. They did, in fact, on one occasion send the report to Dr. Griega, and they weren't getting any additional information or evidence. Your Honors, I have nothing. Unless you have any further questions, I have nothing further. Very well. Thank you. Briefly, since Judge Benton wrote the previous opinion, I declined to interpret what he meant when he wrote that opinion. However, the court should bear in mind that when that opinion was written, we did not have these policies and procedures before us because we had not reached that stage of the litigation yet. I am not here to argue about whether they abused their discretion with what occurred at the time in terms of paying benefits under the plan. We have a new issue here. And that is whether they breached their fiduciary duty. How do we define that duty? We define that duty under the statute by the reasonable person standard. How do we determine what that reasonable person standard is? The easy way to do it is look and see how they themselves defined that duty. And they did. And that's what this lawsuit now is based on. If the court ultimately finds that I can't do that, I have nothing to add, to be honest with you, because there is nothing more to say. But the statute defines the reasonable person standard. Aetna defined how that reasonable person was supposed to act themselves. That's what we're basing the lawsuit on. Briefly in terms of further evidence. Again, I am not entitled to relitigate whether she's disabled or not. That has already been decided. I don't need an expert to come in whether to say she's disabled or not. That matter has already been decided. There are factual witnesses who will need to come in to determine what happened and how the responses would have made, for example, in causation when this case goes before trial. And when Aetna comes up here and says, well, there are no more evidence and there is no more witnesses and we can't do anything else, well, that's kind of interesting because of the burden shifts. Then they lose on causation because there is no evidence on it. I don't think that's what they want to do. And we haven't even gotten into damages, which my client is certainly entitled to talk about, which is a factual issue because it has to do with surcharge. So to say that there is no more evidence in this case is just inaccurate. There's all sorts of evidence that still needs to be presented to the fact finder. We are just not at that stage yet. We are here talking about duty and breach and whether I've established evidence to establish that took place. I believe I have. That's why we need to remand this case back. Very well. Counsel, the court appreciates your appearance and arguments today. The case will be submitted and decided in due course. Ms. McKee, would you call our third case for argument, please? Yes, Your Honor. Case number 18-3076, Eastern Missouri. Marian S. Providence of the United States et al. versus City of Kirkwood et al. No, no, no. May it please the court, Mr. Hussle, friends and supporters of St. John Vianney.